Good morning. Good morning, Your Honor. My name is Ann Voights. May it please the Court. I represent appellants in this case. I'd like to reserve four minutes of my time, if I may, for rebuttal. The district court here erred by holding that Monsanto had failed to show that it produced PCBs and deliberately concealed its toxicity pursuant to a federal officer's direction. Justice courts have said that you don't have to win a case in order to prove that you're entitled to federal officer removal, so too you don't have to lose a case in order to The test that this Court has applied is whether or not the removing party has shown that it's a person within meaning of the statute, something that's undisputed here. Second, whether there's a causal nexus between its actions, taken pursuant to a federal officer's directions, and the plaintiff's claims. And then third, whether there is a colorable federal defense. The district court's ruling here focused solely on the causal nexus, and in looking at that under a federal officer. And second, whether those actions are causally related to the dispute. In this case, both of those are satisfied. Both, under this Court's case law and under the Supreme Court's case law, are supposed to be relatively low thresholds that are easily satisfied. But the construction that the district court applied here was exacting and without a tether in this actual statutory language. With respect to the causal connection here, all that we need to show are that the challenge acts occurred because of what the defendants here, what Old Monsanto was asked to do for the government. I'm not sure that's right. I think you need to show a fair amount of direct control and direction by the government. And what direction and control by the government is there in the record here? Your Honor, there are multiple examples of direction and control here, if I could address those. First, with respect to the specifications, the government specifically, in a number of its specifications, required particular types of PCBs to be used. They granted necessity certificates to allow Monsanto to produce PCBs that it otherwise could not because it didn't have the capacity, because they were essential for the national defense. There's ample evidence in the record that the qualities of PCBs, their, for example, their lack of solubility, their resistance to changes in temperature, their lack of flammability, all of those were things that made them necessary for the national defense and meant that there were no adequate substitutes for it. What did the government ask them to do, specifically? As opposed to, we've got this sort of multiple interim parties and there's kind of a long train to get to the causal nexus. So maybe you can link that up, if the government, in your view, directed them to do something specific. Certainly. It did so by requiring the use of specific PCBs in its specifications, for example, for coating, for wires or cables in the Navy, for example, for use in potting material, in missiles, for its use in anti fouling paint for ships. And so all of those, I think, are examples of where the government said, you have to use this. And the evidence... And yes, it does require the court to draw a connection. The evidence that the government itself agreed that there were no other substitutes that would meet these requirements, that it not be looking at that, there was no alternative. Does that mean, in your view, that they acted under the direction of the government? In other words, compliance with these specifications means that they had to have act under the direction of the government? Yes, but the specifications alone aren't the only thing in the record. We also have evidence... What's your best support, though, kind of taking each of these pieces of evidence? Let's go to that one with respect to... Some of the numbers and some of the specifications. What's your best case that that means acting under? Well, if this case... If this court looks at Sawyer, for example, a 2017 case out of the Fourth Circuit, they said, essentially unanimously, courts, when they've looked at products that are created for the government, pursuant to specifications, they've concluded that that's an appropriate example of where federal officer removal should apply. That's particularly true here, where we're talking about products that are made for the national defense. As this court recognized in McKay, when we're talking about things that are for the federal defense, for national security, the government may make calculations about risks and benefits that are different from the calculations that might be acceptable in a civil context. And here, time and time again, when you look in the record, you find the government itself saying, again and again, that these are essential for the national defense, that they need to expand capacity to meet that. You have letters in which they direct Monsanto to produce PCBs in compliance with contracts to third parties. You have examples in the record where Monsanto, in fact, objected and said it no longer wanted to sell PCBs, and it was directed pursuant to the DPA to produce those documents. We think that that, altogether... Here's my problem with that argument. So far as it goes, I agree with you, but the complaint is not the manufacturer of the PCBs, not the supplying of the PCBs to the government for the purpose for which the government sought to use them. The complaint is that, true or not, I don't know yet, that Monsanto concealed the dangers of the PCBs and disposed of them improperly. Did the government direct or control either of those actions, the concealment of the dangers or the disposition of the improper disposition? Well, Your Honor, don't address that, but there are... But that is focusing on simply one claim that's raised in the complaint. And in fact, there are multiple claims that they raise, including defective design. And so here where, for example, the government was specifying, when it lists a particular PCB with a number, that's referring to a specific chemical configuration. So when the government says you have to use this particular type of Aerochlor, for example, in our specification, they understand what they're asking for, they're requiring Monsanto to provide it. And so to then have a claim that that is defective in design, I think is sort of the classic example of where that is appropriate to have federal officer removal, because where the government makes that... I'm not sure you're answering my question yet. Is there anything here that shows that the government directed or controlled Monsanto in concealing the dangers of PCBs, directed or controlled Monsanto with respect to the manner in which it disposed of the PCBs? If I could separate those into two issues. First, with respect to the failure to warn claim. And that's one claim and one claim only. There isn't evidence that the government failed to or instructed Monsanto not to warn people. There is, however, ample evidence that Monsanto warned both the government and third parties of the risks of PCBs. Well, that then is a factual question, is whether they warned or didn't warn. But that's not a question as whether the government directed them to do so. Correct. Okay. But under the statute, removal only needs to be proper as to one claim. It doesn't have to be proper as to all. What about disposal? With respect to disposal, in fact, we have evidence in the record that the government itself was responsible for improper disposal. You have the spill in Duwamish River when the government dropped a transformer. You have, similarly, the fact that Puget Sound Naval Station is a Superfund site. You have evidence from the Air Force and from the Navy acknowledging that older ships in which PCBs were used for paint, for insulation, for a variety of purposes, were at risk for PCB contamination because when they went to maintain them in naval stations, when they went to renovate them or refurbish them, then you could potentially have contamination. You could have... Well, to the extent that that's true, I guess you defend, well, the government did that. We didn't do that. But again, I think when you look at the purposes for which these products were sold and the fact that a substantial portion of them went to the government, that's precisely the sort of area where there is a real federal interest in having these cases tried in a federal forum. But if you go back, I went back to look at the notes on the case you cited in your briefing that you just talked to us about, Sawyer versus Foster Wheeler, that's the Fourth Circuit case, correct? Correct. But the actual language in that case talks about manufactured for the government. So is there any evidence in this record that these PCBs were manufactured for the government? Yes, there is, Your Honor. Where do we look for that? So I think if this court looks at the letters, for example, directing Monsanto to produce PCBs, the fact that they did so in many instances as a subcontractor is as a legal matter not relevant to whether they're entitled to federal officer removal. I mean, I think the letters, just in rough form, I think those are your best evidence compared to all the other evidence offered. So that would get you to the acting under? That would get us to the acting under, and it also gets us to the causal connection. And how do you then make that second link? So I think, again, that second link, I think, laps over to the colorable federal defense. Because when you look at here, the question is, did they occur because of what they were asked to do? The government asked for the PCBs specifically and asked for particular PCBs based on their formulation because of their qualities, because of what they did. And the government did that knowing of the potential risks and making a distinction about balancing those benefits and those risks together. That's something that this court in McKay recognized is important to protect. It's something that the Supreme Court in Boyle recognized is essential. But if you're going to have contractors do things for the government that the government would otherwise have to do itself, in this case, for example, create the material for missiles, create insulation for cables and wires, create the materials that would go into transformers, then you don't wanna create a disincentive where companies are producing things for the government and then are at risk for decisions and discretionary decisions that are made by the federal government itself. Do any of Washington's claims extend to military property? So they have disavowed those claims, but they are trying to have it essentially both ways. I'd like the answer is no. So they've said no, but the problem is when you look at what they say about PCBs and what they claim about the spread of them, it's impossible to sort of view these waterways in hermetic isolation and say, well, only this part of this waterway can be attributed to the federal government and we're going to look at only the rest. And so I think in this case, because you had ships traveling through that were using these products, because you have records of sales directly to Washington, because you have records of sales that were made over Monsanto's objection at a point when it was no longer selling to private companies, we think we've more than adequately met the standard of causal nexus. And I see that I'm getting very close to my time for rebuttal. So if the court has no further questions, I'll reserve the balance of my time. Thank you. Thank you. May it please the court. Anne Eagler, Deputy Solicitor General, appearing on behalf of the state of Washington. Monsanto cannot meet its burden under 1442 for two reasons. One, there is no causal nexus between Washington's claims and any action that Monsanto took under the direction or guidance of a federal officer. And second, they have not shown a colorable federal defense. Lacking either of those elements, the district court's findings would be correct. The second one, lack of any colorable federal defense, that does not appear to be part of the appeal. It is not part of the appeal, but this is de novo review and the court can uphold the district court's order on any basis. Moving first to causal nexus, as the court noted, the Supreme Court and this court have consistently found that what is required to be shown is that the federal government exercised control or guidance over the manufacturing by Monsanto, and there is absolutely no evidence of that here. What we have is sales of off the shelf goods. The government never directed Monsanto regarding its production, its packaging, its formulation, or the warning placed on its products. I guess their argument is, but if the government directs that it needs these products and these products need to meet these specifications, that indirectly it is controlling manufacturer. What is your response to that? My response, Your Honor, is that under the United States Supreme Court's analysis and Boyle versus United Technologies, that exact scenario fails. In that case, the United States noted that if, for example, the US military were to buy stock helicopters and those helicopters ended up having a problem in some way, for example, with the ejection system. If a lawsuit were brought, federal removal would not be appropriate because in that instance, the off the shelf or stock purchase of helicopters would not involve federal control or guidance of the contractor. And that's what we have here as well. Yes, Monsanto has was sold directly to the US government. They have shown that some of the product was sold to subcontractors with the US military as well, but that does not meet the test applied by the US Supreme Court and consistently applied by this court and Cabalchi and Goncalves and in the Leidy case. In every one of those cases, the court has held that that evidence of control is necessary. Now, Monsanto points to the Raytheon letter as its best evidence of federal control. And it contends that at that time, Monsanto was not producing PCBs and the federal government directed them to do so. That is not correct. And I would point you to ER 285, which is an interdepartmental government study that was issued in the early 1970s, the same time as the Raytheon letter. And in that government study, the government notes that Monsanto was still producing PCBs. They were still selling them to private companies and noted that they were sold, for example, to those who would use them for transformers and capacitors. So Monsanto's contention that it engaged in manufacturing because it was required to do so by the government is false. What happened with respect to the Raytheon letter is that the Raytheon letter is based on the Raytheon Production Act, which allows the government to direct a company to prioritize orders based on military need. And that's what was done here. Monsanto was required to comply with that law. And as we know from the Watson case, the United States Supreme Court has held that compliance with the law is not sufficient to show government control or supervision. So that letter, that single letter standing alone, their best possible piece of evidence, does not pass the test. Okay. Here's my hesitation. It seems to me I have no difficulty accepting that the claim of failure to warn is not removable, because I don't think the government directed Monsanto to conceal the risks. And I think the claim of disposal is not removable, because I don't see that the government was directing Monsanto to dispose of it improperly. And I include within that then the negligence claim. The one claim that gives me pause is the claim that was mentioned by your adversary, which is the second cause of action about defective design. How do you respond to that? Why was there insufficient government control about design? Because it sounds like there was a fair amount of specification by the government as to what these PCBs should be. Your Honor, there was no government specification about what these PCBs should be. And I'd like to walk you through the record, because reading the record demonstrates that Monsanto's characterization of the record is absolutely incorrect. So for example, Monsanto contends that with respect to paint, the government specified that heat resistant paints use Monsanto's asbestos products. Turning to ER 110, for example, that is not so. That record citation states that use of Monsanto's PCBs is quote, an example of a formulation, and quote, in no way is the supplier restricted to this formulation. We can move through the record and look at the sales of Thermosol at ER 116, the orders that were made by the federal government at ER 122 through 27, the cable that was to use PCBs to meet specs for lacquer. Again, the government did not specify how Monsanto was to manufacture its PCBs and took no role in that manufacture. And finally, with respect to wire, again at ER 256, the federal government approved Aerochlor for electrical wire, but it did not require it, and it took no act of control or guidance with respect to manufacture of the product. There simply is not one piece of evidence showing any government control. And I think it's helpful to look at this court's precedent as well. Monsanto relies heavily, for example, on Goncalves. That case is an excellent example of what level of control the courts have found to be sufficient to meet this test under 114. In that case, yes, this court held that the burden is low, but then it went through and analyzed the evidence and found that the federal government directly controlled the insurance company that was at issue, directly required the subrogation clause that was at issue in the lawsuit, that the federal government actually owned the funds that were at issue as well. Here, this case stands in stark contrast. There is absolutely no evidence of government control. The government never became involved with how this product was manufactured. It was purchased off the shelf by a variety of customers, and at no time did the government become involved. And this is particularly important when you look at the purpose for federal court removal. The purpose is to ensure that when a federal officer's actions are going to be subject to judicial review, that the federal officer has the ability to bring a defense in federal court. Here, there simply are no federal officer actions for the court to review. And for that reason, a remand to the state court is appropriate, and an appropriate recognition of federalism concerns. Monsanto asks that you turn to Sawyer as a helpful case, and we would agree. In Sawyer, the situation was that the Navy had asbestos that was used in ship boilers. That asbestos use was directly controlled by the US government. There were, according to the case, quote, intense direction and control on the part of the federal government. The federal government was involved not only in the specifications, but also the warnings that were not to be placed on that product. Again, that's an excellent example of the type of control that the federal courts and this court have found to be sufficient to provide the causal nexus. There is not one piece of evidence in this case that provides such evidence. In conclusion, because the federal government never directed, supervised, controlled, or financed Monsanto's manufacturing process or the warnings that it provided, Monsanto simply cannot meet its burden, and the district court order remanding the case to state court should be upheld. Thank you. Thank you. Time and time again, the Supreme Court and this court have cautioned that federal officer removal is not to be applied unduly grudgingly, that the district court applied here bore no relation to the statute. If I could turn to the questions about the records, what Washington is asking you to do is to look at each piece of evidence in complete isolation. As they would argue, they say zero plus zero equals zero. None of these pieces of evidence are by themselves zero, and certainly put together, they more than adequately meet the standard of showing that in this case, the causal nexus is met. They were met under the statute before it was amended, and they more than certainly are met under the statute. I would like to address the answer that I got to my question with respect to control of design of the PCBs, because that seemed to me among the arguments you made, the one that at least struck me as plausible. But the response was, the government did not, in fact, order specific formulations by Monsanto. I think if this court looks at the specifications and looks at them in the context of all of the documents where the government said again and again, there were no substitute for PCBs, that while there might be some variation in the particular percentages, there was no variation in terms of what they could use. There was no alternative that could comply with their requirements, because of their unique qualities in terms of flame resistance, lack of solubility, and others. If this court also looks, for example, at page 515 and 517, they talk about the fact that when you're talking about these specific names, when they call out a particular product name, they're talking about a specific chemical compositions, because not all PCBs are alike. They have different, some are resin, some are oils, and each of them have a different chemical composition. So when the government was asking for a specific type, an Aerochlor with a particular number, they're asking for it because that was what was suited for the application for which they wanted to use it. That is precisely the sort of guidance and control that's been adequate. This is not a case, as Washington would have it, where we're talking about buying a stock item off the shelf, where there is discretion in the person who's producing the item, right? If you produce, if you're just told by produce me a helicopter, and there's no specification. No, but when they say produce me a helicopter for the government, the specs are given very specifically, and it's usually to manufacture to this particular steel or alloy or whatever, and this seems a far cry from that. I think it is not, actually. If the court looks at what they were talking about, they list, for example, the requirements that they needed in terms of how flame resistant it needed to be. What did it need to resist? For example, with products being used in the Navy, did it need to resist salt? Because it's going to be in salt water. All of those are things that the record amply shows could only be met in this particular situation by the PCBs that they specified. So there isn't discretion. So let me just ask you this. There's a difference. I mean, you say because these are not really off the shelf, but you could have aircraft or pipeline or other items which are partial parts of them are off the shelf, but they still have to be a certain strength, a certain alloy or whatever. So it seems to me that the argument you're making, well, that they're off the shelf, but the only spec that can meet it is the Monsanto spec. That's a little bit of a different argument, unless I'm misunderstanding you. Well, that's not the only argument. The argument is also that at certain points, it was only produced for the government. For example, during World War II, when they're talking about expanding the capacity at those factories, they were saying 100% of that expansion was going to the national defense. For example, once Monsanto in the 70s had stopped selling to private sector entities, but it was being directed by the government to sell either to it or to contractors in order to meet the national defense needs. So given those, I think they're complementary arguments in that case. As I read the second cause of action, which is the one that I'm concerned about here, it doesn't say that all PCBs are unreasonably unsafe. It doesn't say that all PCBs that would satisfy the government's needs or specifications are unsafe. It says that the particular PCBs manufactured by Monsanto for the government are unreasonably unsafe. And the answer I got to my question to your adversary was, well, the government said it's quite content to purchase the PCBs manufactured by Monsanto, but it made clear that it was willing to purchase other PCBs formulated somewhat differently by other manufacturers. That sounds to me as though they're not ordering Monsanto to manufacture it precisely in the way Monsanto has designed its PCBs. So I don't think the record sustains that position. I think... I'm just reading the complaint. No, I understand. But as this court said in Leidy, when looking at federal officer removal, they're supposed to look at the defendant's theory of the case. And particularly here, where it is a facial, not a factual challenge, all the inferences need to be drawn in Monsanto's favor. Doing that, I think you have the government, you have evidence over and over again in the record that there weren't substitutes. You have examples where, for example, contractors said... There weren't substitutes for what? There weren't substitutes for PCBs... For PCBs. ...generically, or weren't substitutes for Monsanto's PCB? Well, Monsanto was effectively the producer of PCBs in the U.S., according to the complaint. And so this is a distinction that's, I think, somewhat meaningless to say, well, they could have gotten PCBs from somewhere else, when their own contention is that Monsanto was the only one, in fact, producing them. With respect... Okay, can you wrap it up now, as you have exceeded your time? I apologize, Your Honor. No, not a problem. Because the district court applied the incorrect test, and because under the appropriate test... We're on de novo review, so now we're going to take a look at it under the standards you're laying out. Yes. But applying the test set forth in con culvis in lae, this court should reverse the district court and remand so that this case can be heard in federal court, to accommodate the federal interests at play. Thank you, Your Honor. Thank you. Thank both the counsel for your excellent arguments this morning. State of Washington versus Monsanto.
judges: Hawkins, McKeown, W. Fletcher